Merrimack,  }
Nov. 7, 1911. }

## MOORE'S CASE.

The fact that an attorney violates his oath of office by consenting that falsehood be done in the court, and is shown to be morally or mentally wanting in the elements of common honesty and fair dealing, is sufficient cause for his disbarment.

COMPLAINT, by the attorney-general, charging Joseph Moore with unprofessional conduct in his office as attorney. The charges are that Moore took advantage of the intoxicated condition of one Flanders to obtain from him a note for $505 in settlement of a suit for alienation of affection brought by Ida Quimby against Annie Saltmarsh; that Moore subsequently sold the note to S. S. Sharon, and upon payment being refused brought suit in Sharon's name, attaching Flanders' savings bank account and also his wages due for labor in the repair shops of the Boston & Maine Railroad.

*Edwin G. Eastman*, attorney-general, and *Thomas F. Clifford*, county solicitor, for the complaint.

*Hugh Moore* (with the defendant *pro se*), opposed.

PEASLEE, J. At the hearing before the whole court, it appeared that Flanders is an habitual drunkard, infirm, untruthful, and

infatuated with the Saltmarsh woman. His testimony is so unreliable that it cannot be depended upon to affirmatively show what happened when the note was given, and it is found that the charge of obtaining the note by fraud is not satisfactorily established.

In his answer Moore affirmed the allegation of the complaint that he sold the note to Sharon for full value. Both parties summoned Sharon as a witness at the hearing, and he testified in detail to purchasing the note in that way. He was cross-examined by the defendant, who gave no hint that the transaction was other than a *bona fide* sale. On the contrary, the whole trend of the cross-examination was to intensify the claim that Sharon paid about $500 for the note. The defendant, upon his own direct examination, testified to the same effect. Upon his cross-examination, it appeared that the real transaction was that he had theretofore arranged for a loan from Sharon, to be secured by a note and mortgage on real estate standing in the name of Moore's wife. This note and mortgage were given, and Sharon also took the Flanders note, but gave no additional value for it. He is amply secured upon the real estate. After these facts appeared, Moore testified that he considered this a "technical sale," and that he made it to cut off the defence of want of consideration, which he feared Flanders would set up. He offered no explanation of his failure to voluntarily disclose to the court the true nature of his transaction with Sharon.

Early in April, Moore gave notice to take depositions in the suit *Quimby* v. *Saltmarsh* and summoned Flanders to go from his home in Concord to give a deposition at Tilton. Just before the day set for taking depositions Moore gave notice that they would not be taken, and demanded of Flanders the repayment of $3 paid him as witness fees. When at a later date Flanders demanded a release of his wages from the trustee process in the Sharon suit, Moore refused to give one unless Flanders would repay the $3. This was finally done.

From these facts it appears to a majority of the court that Moore's conduct has not been of the high order the public has the right to demand from members of the legal profession. His conduct in procuring and negotiating the note, if excusable between parties dealing at arm's length, is not of a character calculated to reflect credit upon the actor. His course in failing to make a plain explanation to the court of his transaction with Sharon was highly reprehensible. It was a violation of his oath as attorney not to consent that any falsehood be done in the court, and a failure to perform his

obligation in such case to give knowledge thereof to the justices of the court. P. S., c. 213, s. 5. His conduct in trusteeing Flanders' wages was unprofessional, and his demand of a return of the $3 as the price for the release he was already bound to give was extortionate.

A minority of the court are of opinion that the facts in the case are susceptible of an interpretation consonant with good character and reasonable capacity. But as the majority view is that it has been proved that the defendant is morally or mentally wanting in the elements of common honesty and fair dealing, it follows that some action must be taken for the protection of the community. *Delano's Case*, 58 N. H. 5; *Hobbs' Case*, 75 N. H. 285; *Allen's Case*, 75 N. H. 301.

The order is that the respondent be suspended from his office as an attorney.

WALKER and BINGHAM, JJ., dissented: the others concurred.